

DA 08-0199

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 65

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JOSHUA WAYNE STRONG,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of McCone, Cause No. DC 02-04
Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Robin A. Meguire, Attorney at Law, Great Falls, Montana

        For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Jennifer Anders, Assistant
Attorney General, Helena, Montana

        Kendall Link, McCone County Attorney, Circle, Montana

Submitted on Briefs:  January 7, 2009

Decided:  March 3, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Joshua Strong (Strong) pled guilty to two counts of burglary, the Seventh Judicial District Court, McCone County, adjudged him to be a criminally convicted youth, and committed to the Montana Department of Corrections (DOC) for eight years, for each count, with two years suspended. The sentences were to run concurrently. After serving nearly four years in prison, Strong challenged the legality of his sentence. The District Court affirmed its previous sentence. Strong appealed and we affirm.

¶2 The appeal presents the following issue: *Whether Strong's sentence to the Department of Corrections is illegal.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 The State charged Strong in July of 2002, age 17 at the time, with two counts of felony burglary. The State moved, pursuant to § 41-5-206(1)(b)(vii), MCA, to transfer these charges to district court, despite the fact Strong was a youth. The court approved the transfer. The State also filed theft charges in Youth Court. These charges did not fall within § 41-5-206(1)(b), MCA.

¶4 Strong entered a plea of guilty to the felony burglary charges in exchange for the dismissal of the theft charges. The District Court sentenced Strong in October of 2003 as a criminally convicted youth pursuant to §§ 41-5-206 and 41-5-2503, MCA. The court committed Strong to the DOC for eight years, with two years suspended on each count, with the counts running concurrently.

2

¶5   In 2007, while serving his sentence at the Montana State Prison (MSP), Strong learned that his sentence might be illegal as the court had committed him to the DOC for more than five years.  He wrote a letter to the District Court requesting counsel.  The court appointed counsel and the parties filed briefs.

¶6   Strong argued that the sentencing court imposed an illegal sentence when it failed to suspend all but five years of his DOC commitment.  The State countered that the five year limitation in § 46-18-201(3)(d)(i), MCA, for DOC commitments did not apply to a youth transferred to district court under § 41-5-206, MCA.  The court affirmed the original sentence.  Strong appeals.

## STANDARD OF REVIEW

¶7   We review a sentence imposed in a criminal case only for legality.  *Adams v. State*, 2007 MT 35, ¶ 21, 336 Mont. 63, 153 P.3d 601.  We may review the legality of a sentence under certain circumstances "even if no objection is made at the time of sentencing."  *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979).  The *Lenihan* rule may apply to constitutional challenges of criminal sentences.  *State v. Garrymore*, 2006 MT 245, ¶ 15, 334 Mont. 1, 145 P.3d 946.  The constitutionality of a sentencing statute presents a question of law that we review de novo.  *In re S.L.M.,* 287 Mont. 23, 32, 951 P.2d 1365, 1370 (1997).

## DISCUSSION

¶8   Strong raises for the first time on appeal the issue of whether § 46-18-201(3)(d), MCA, violates his right to equal protection.  In particular, he cites to the discrepancy in the

3

way that the statute treats adults and criminally convicted youths for purposes of DOC commitments.

¶9    Section 46-18-201(3)(d), MCA, provides a sentencing court with the option of a DOC commitment. For an adult offender, however, "all but the first five years of the commitment to the department of corrections must be suspended." Section 46-18-201(3)(d)(i), MCA. By contrast, for a youth transferred to district court under § 41-5-206, MCA, and found guilty in the district court of an offense enumerated in § 41-5-206(1)(b), MCA, the court may require a DOC commitment "for a period determined by the court for placement in an appropriate correctional facility or program." Section 46-18-201(3)(d)(ii), MCA. The statute exempts youths transferred to the district court under § 41-5-206, MCA, from the limitation on the length of the DOC commitment. Strong contends that the exemption in the statute regarding DOC commitments for youths violates both the Equal Protection Clause found in the Fourteenth Amendment of the United States Constitution and the Montana counterpart contained in Article II, § 4, of the Montana Constitution.

¶10   We must address whether Strong can raise his constitutional challenge for the first time on appeal. This issue incorporates the scope of the *Lenihan* exception to our prohibition to raising an issue for the first time on appeal.

¶11   Our decision in *Lenihan* permits a defendant to challenge the legality of his sentence for the first time on appeal. *State v. Ellis*, 2007 MT 210, ¶ 7, 339 Mont. 14, 167 P.3d 896. In so doing, however, we have differentiated between an "illegal" sentence and an "objectionable" sentence. For example, in *State v. Heddings*, 2008 MT 402, ¶¶ 19-20, 347

4

Mont. 169, 198 P.3d 242, the defendant failed to object at sentencing to the district court's imposition of polygraph testing as a condition of the defendant's probation. We rejected the defendant's contention that the polygraph test amounted to an illegal condition, rather than merely an objectionable condition. *Heddings*, ¶ 20. We thus refused to review the defendant's objection raised for the first time on appeal. *Heddings*, ¶ 21.

¶12 Similarly, not all constitutional challenges to a sentence may be raised for the first time on appeal. We allowed the defendant in *Ellis* to raise the constitutional challenge to the requirement that he repay the costs of his court appointed counsel. The defendant contended that the statute authorizing the repayment condition, § 46-8-113, MCA (2005), violated the Equal Protection Clause of the United States and Montana Constitutions. The defendant's facial challenge alleged, in other words, that an illegal statute supported his illegal sentence. We reviewed the defendant's equal protection challenge raised for the first time on appeal under these circumstances. *Ellis*, ¶ 7. We premised this review on the alleged illegality of the defendant's sentence.

¶13 By contrast, in *State v. Mainwaring*, 2007 MT 14, 335 Mont. 322, 151 P.3d 53, we refused to address a constitutional challenge raised for the first time on appeal. There the defendant did not challenge the constitutionality of the Persistent Felony Offender statute or the Youth Court Act. The defendant instead argued that the court's *application* of these statutes to his case violated his right to equal protection of the laws. *Mainwaring*, ¶ 20. We refused to consider his as-applied constitutional challenge for the first time on appeal. *Mainwaring*, ¶ 20. Although not stated explicitly, our refusal to review the defendant's as-

applied challenge for the first time on appeal stemmed from the fact that the court had imposed a potentially "objectionable" sentence as opposed to an "illegal" sentence. *Heddings*, ¶ 20.

¶14    In this light, we address Strong's equal protection challenge to the exemption contained in § 46-18-201(3)(d)(ii), MCA.  Strong failed to raise the equal protection challenge in the District Court.  Strong argued there for application of the maximum five year DOC commitment permitted by § 46-18-201(3)(d)(i), MCA.  Strong's opening brief on appeal raises for the first time his facial challenge to the statute's exemption for criminally convicted youths from the five year DOC commitment.  We will address this facial challenge pursuant to our decision in *Ellis*, ¶ 7, to ensure that Strong has not received an illegal sentence.

¶15    Strong raises what can be deemed an as-applied challenge to application of the statute to his case only in the final pages of his reply brief on appeal.  Like in *Mainwaring*, ¶ 20, we decline to address Strong's as-applied constitutional challenge when raised for the first time on appeal.  Strong waived this objection by not raising it in the District Court.  *Mainwaring*, ¶ 20.

¶16    We turn, therefore, to Strong's facial challenge to § 46-18-201(3)(d)(ii), MCA.  We first identify the classes involved and determine whether they are similarly situated when considering the level of scrutiny to apply in an equal protection challenge. *Ellis*, ¶ 11. When the classes are similarly situated, strict scrutiny applies to laws affecting fundamental rights. Intermediate scrutiny applies to rights conferred by the Montana Constitution, but not found

6

in the Declaration of Rights. Rational basis applies if neither strict nor intermediate scrutinies apply. *Ellis*, ¶ 11; See *Farrier v. Teachers Retirement Bd.,* 2005 MT 229, ¶ 16, 328 Mont. 375, 120 P.3d 390.

¶17 Strong asserts that the statute creates two separate classes: criminally convicted youths transferred to district court under § 41-5-206, MCA, and adults who committed the same offense. Strong relies on *S.L.M.*, where we held adults and youths who committed the same offense and were sentenced alike (as adults) were similarly situated for equal protection purposes. *S.L.M.*, 287 Mont. at 33, 951 P.2d at 1371. Strong's challenge presents classes similar to those involved in *S.L.M.*

¶18 We next must determine whether the claim involves a suspect classification. The statute bases its classifications on the age of the defendants. Sections 46-18-201(3)(d)(i-ii), MCA. We follow the United States Supreme Court in holding that a sentencing distinction based upon age does not implicate a suspect classification that would require application of strict scrutiny. *S.L.M.*, 287 Mont. at 33, 951 P.2d at 1371; *Matter of Wood,* 236 Mont. 118, 125, 768 P.2d 1370, 1375 (1984) *overruled on other grounds* (citing *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313-15, 96 S. Ct. 2562, 2566-67 (1976)).

¶19 We then look to the nature of the interest affected to determine whether it involves a fundamental right that would trigger application of strict scrutiny. *S.L.M.*, 287 Mont. at 33, 951 P.2d at 1371. The preamble of the Montana Constitution, in connection with Article II, Sections 3, 4, and 17, conveys to individuals a fundamental right of physical liberty. *Matter of C.H.*, 210 Mont. 184, 201, 683 P.2d 931, 940 (1984). Article II, Section 15 of the

7

Montana Constitution guarantees to youths all fundamental rights enumerated in Article II, unless specifically precluded by laws that enhance the protection of these youths. *S.L.M.,* 287 Mont. at 34, 951 P.2d at 1372. We must balance a youth's right to physical liberty "against her right to be supervised, cared for and rehabilitated." *S.L.M.,* 287 Mont. at 34, 951 P.2d at 1372 (citing *Matter of C.H.*, 210 Mont. at 203, 683 P.2d at 941). If the legislature seeks to carve out an exception to these guarantees, it must show not only a compelling state interest, but also that it designed the exception to enhance the rights of youths. *S.L.M.*, 287 Mont. at 35, 951 P.2d at 1373.

¶20    Section 46-18-201, MCA, governs the form of a criminal sentence. The sentence may take the form of imprisonment at MSP, a suspended or deferred sentence, or a commitment to the DOC. Section 46-18-201, MCA. We have determined that a DOC commitment constitutes a less severe sentence than imprisonment at MSP. *State v. Jackson*, 2007 MT 186, ¶ 20, 338 Mont. 344, 165 P.3d 321.

¶21    The DOC Policies and Procedures set forth the potential placements a DOC commitment could entail. The DOC commitment of an adult, or youth transferred to district court, could consist of a prison sentence, appropriate community-based programs in prerelease centers, intensive supervision programs, or the Treasure State Correctional Training Center, also known as boot camp.

¶22    In order for an adult offender to receive the less onerous DOC commitment, however, the court must be willing to suspend all but five years of the commitment. Section 46-18-201(3)(d)(i), MCA. The statute imposes no similar impediment on a court's ability to

8

commit to DOC a youth transferred to district court under § 41-5-206, MCA. Thus, the statute, on its face, provides a youth, convicted of a serious offense, with the possibility of a DOC commitment in a variety of settings that range from imprisonment to boot camp. We must determine whether these opportunities constitute compelling interests that enhance the rights of youths. *S.L.M.*, 287 Mont. at 35, 951 P.2d at 1373.

¶23     The District Court sentenced Strong under the authority of the Criminally Convicted Youth Act (CCYA). Section 41-5-2503, MCA. The CCYA provides for the custody, assessment, care, supervision, treatment, education, rehabilitation, and work and skill development of youths convicted in district court pursuant to § 41-5-206, MCA. Section 41-5-2502(2)-(3), MCA. The CCYA also provides youths with certain protections and benefits not available to adult offenders. For example, the district court retains jurisdiction over the case until the youth reaches the age of 21. Section 41-5-2503(1)(b), MCA. The court may suspend all or part of any sentence imposed during this period. Sections 41-5-2503 and -2510, MCA. Adult offenders enjoy no similar possibility. Likewise, any adult offender whom the court determines warrants more than five years of supervision, must be incarcerated at MSP. Sections 46-18-201(3)(c) and (d)(i), MCA. Any youth offender whom the court determines warrants more than five years of supervision may be committed to the DOC. Section 46-18-201(3)(d)(ii), MCA.

¶24     This enhanced flexibility with regard to treatment of youth offenders comports with the goals of the Youth Court Act to ensure rehabilitation of youth offenders rather than solely retribution. *Matter of C.H.*, 210 Mont. at 203, 683 P.2d at 941. We recognized as

compelling the State's purposes in classifying an offender as a "delinquent youth." These purposes include rehabilitation of youth offenders before they become adults, and substitution of a program of support, care, and rehabilitation in place of retribution. *Matter of C.H.*, 210 Mont. at 203, 683 P.2d at 941.

¶25 We agree with the State that increased flexibility with regard to the placement of youth offenders convicted of serious crimes presents a compelling interest. We sustained an equal protection challenge in *S.L.M.* based upon the fact that requiring a court to impose an adult sentence in addition to the juvenile disposition went beyond rehabilitation and injected "the specter or retribution." *S.L.M.*, 287 Mont. at 36, 951 P.2d at 1373. Nothing in the exemption at issue here subjects all youths to the risk of serving an adult sentence. In fact, this exemption provides a vehicle for a court, concerned about the severity of the crime committed by a youth, to guarantee long-term supervision of a youth offender without having to resort to a prison sentence. A similarly situated adult offender would face the prospect of imprisonment. The DOC retains options regarding the appropriate placement of a youth convicted of a serious offense not available to an adult offender.

¶26 Thus, unlike *S.L.M.*, where the statute reduced a youth's rights compared to an adult, the exemption enhances the youth's rights compared to an adult. The exemption provides the sentencing court with more flexibility in ensuring the long term supervision of youths convicted of serious offenses in district court. This flexibility potentially allows the DOC to place the youth in a program that emphasizes rehabilitation over retribution. *Matter of C.H.*, 210 Mont. at 203, 683 P.2d at 941. Strong has failed to establish that the exemption for

10

youth offenders contained in § 46-18-201(3)(d)(ii), MCA, on its face, violates equal protection guarantees contained in the United States and Montana Constitutions.

¶27 Strong argues in his reply brief that the court's application of the exemption has reduced his physical liberty compared to similarly situated adult offenders because the DOC chose to place him at MSP. As we mentioned previously, however, Strong failed to raise this as-applied constitutional challenge before the District Court. His failure to raise this as-applied challenge results in his waiver of the issue on appeal. *Mainwaring*, ¶ 20. Nothing in § 46-18-201(3)(d)(ii), MCA, leaves the court with the impression that Strong has received an illegal sentence. *Ellis*, ¶ 7.

¶28 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

11