

DA 11-0772

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 281

IN THE MATTER OF:

S.M.K.-S.H.,

      A Youth.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District,<br>In and For the County of Gallatin, Cause No. DJ 09-20A<br>Honorable Holly Brown, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender; Eileen A. Larkin, Assistant
            Appellate Defender; Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; Katie F. Schulz, Assistant
            Attorney General; Helena, Montana

            Marty Lambert, Gallatin County Attorney; Eric Kitzmiller, Deputy County
            Attorney; Bozeman, Montana

Submitted on Briefs:  September 26, 2012

Decided:  December 5, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     S.M.K.-S.H. appeals a dispositional order from the Montana Eighteenth Judicial District Youth Court, Gallatin County (Youth Court). After the youth violated the terms of his initial probation agreement, the court revoked that agreement and entered a dispositional order that extended the youth's probationary period for an additional three years. We affirm.

¶2     We address the following issues on appeal:

¶3     *1. Did the Youth Court exceed its statutory authority by imposing on revocation an additional three-year probationary term that lasts until S.M.K.-S.H's twenty-first birthday?*

¶4     *2. Did the imposition of an additional three-year term of probation violate S.M.K.-S.H's constitutional right to equal protection of the laws?*

### PROCEDURAL AND FACTUAL BACKGROUND

¶5     On December 15, 2009, the State filed a petition seeking a determination that fourteen-year-old S.M.K.-S.H. was a delinquent youth or a youth in need of intervention. The State alleged that the youth committed assault with a weapon, a felony, in violation of § 45-5-213, MCA, when he struck a fellow student in the head with a glass bottle and then punched him in the nose. Initially, the youth denied the State's allegations.

¶6     On June 29, 2010, S.M.K.-S.H. entered a signed admission to the charge filed against him. That same day, the Youth Court held a hearing at which the court accepted the youth's admission and set a dispositional hearing for August 3, 2010.

¶7     At the dispositional hearing, the court declared that S.M.K.-S.H. was a delinquent youth for committing assault with a weapon.  The Youth Court entered a dispositional order, which committed S.M.K.-S.H. to its jurisdiction and placed him on probation until his eighteenth birthday.  As part of its order, the Youth Court expressly forbade S.M.K.-S.H. from owning, possessing or being in control of any firearms or other deadly weapons.

¶8     On October 3, 2011, when S.M.K.-S.H. was sixteen years old, the State filed a petition to revoke his probation and to take the youth into custody.  That action was prompted by a report from the youth's probation officer that S.M.K.-S.H. had violated the terms of his probation agreement by possessing a 9mm handgun.  The Youth Court authorized the State to take the youth into custody and, on November 7, 2011, S.M.K.-S.H. entered a signed admission to the allegations contained in the State's petition to revoke.

¶9     That same day, the Youth Court held a change of plea and dispositional hearing. The court informed S.M.K.-S.H. that it was alleged that he "had violated the terms of [his] probation" by possessing "a 9mm handgun" in violation of the conditions of his probation.  The youth then admitted to those allegations.   In response, the Youth Court accepted S.M.K.-S.H.'s admission and revoked his probation.  Next, the court proceeded to the dispositional portion of the hearing.  The State recommended that the court should commit the youth "to the Montana Department of Corrections until his 18th birthday for

placement at the Pine Hills Youth Correctional Facility," but did not ask "for any probationary period beyond that." Counsel for S.M.K.-S.H. agreed with that request.

¶10 The Youth Court questioned the basis upon which the State and counsel for the youth had decided not to recommend extending the youth's probation. The court stated:

> But what can you give me to consider as far as the reasoning regarding any additional supervision after 18? I'm just going to tell you my hesitation is that once he turns 18, he just kind of gets dropped out there in whatever community he's living at the time, whether it's here or anywhere else, and then he has no support services or supervision -- if I agree to this -- to help make sure that he makes good choices . . . . But what if he just needs support to help get additional education or additional training or just to be responsible to get a job?

¶11 The court then explained to the youth why it was concerned about not extending his probation. The court noted that S.M.K.-S.H. had "done well when [he was] under supervision." Further, the court explained that it was "worried that if we just have you released from Pine Hills at age 18 and there's no follow-up, nobody to go to . . . I'm not willing to say that we've given everything that we could possibly give to support you." The youth responded, "I understand completely where you're coming from, yes."

¶12 Shortly after that exchange, counsel for the State interjected that he was concerned that, in its original dispositional order, the Youth Court only had committed S.M.K.-S.H. to the court's jurisdiction until his eighteenth birthday. The State questioned whether the Youth Court had the authority to extend the youth's probationary period past his eighteenth birthday when it had failed to do so in its original dispositional order. The court asked counsel for both parties whether there was any legal authority for extending a youth's probationary period after his original probation agreement had been revoked.

4

Counsel for S.M.K.-S.H. stated that, because "the Montana Constitution says adults and youth are to be treated similarly," an "argument could be made that the Court wouldn't be able to . . . give more time on the revocation than it would have originally imposed." Counsel for both parties agreed that they were not aware of any cases from this Court that either authorized or prohibited a youth court from extending its jurisdiction over a delinquent youth upon revocation. Counsel for the State did observe, however, that "there's a specific statute on point that says you can modify those orders at any time."

¶13 After considering arguments made by S.M.K.-S.H.'s attorney, the court informed the parties that it was still concerned that failing to extend S.M.K.-S.H.'s probation to his twenty-first birthday would not be in the youth's best interests. The Youth Court told S.M.K.-S.H. that when it sentenced youth offenders, it hoped the sentence would provide "an opportunity to learn and change and what we call be rehabilitated to become a good adult . . . ." The Youth Court ultimately determined that it should order the youth to be placed on probation until he turned twenty-one. The main reason for the court's decision was that it wanted "to make sure [the youth] continue[d] to change [his] thinking and make good decisions, and I want to insure [sic] that we have a way to know that."

¶14 After the hearing, the court entered a dispositional order, which declared S.M.K.-S.H. a delinquent youth and committed him to the custody of the Montana Department of Corrections for placement at the Pine Hills Youth Correctional Facility until his eighteenth birthday. The court also extended the youth's probation until his twenty-first birthday and ordered the youth to "return to the Court immediately following the youth's

eighteenth birthday" to allow the court to "establish the terms and conditions of the youth's probation."

¶15 S.M.K.-S.H. appeals from that dispositional order. He contends that the Youth Court was not authorized—by statute or by the Montana Constitution—to impose an additional probationary period after the Youth Court failed to do so in its initial order.

## STANDARD OF REVIEW

¶16 This Court reviews for correctness a youth court's application and interpretation of the Youth Court Act. *In re K.J.*, 2010 MT 41, ¶ 13, 355 Mont. 257, 231 P.3d 75 (citing *In re G.T.M.*, 2009 MT 443, ¶ 9, 354 Mont. 197, 222 P.3d 626). The constitutionality of a sentencing statute "presents a question of law that we review de novo." *State v. Strong*, 2009 MT 65, ¶ 7, 349 Mont. 417, 203 P.3d 848 (citing *In re S.L.M.*, 287 Mont. 23, 32, 951 P.2d 1365, 1370 (1997)).

## DISCUSSION

¶17 *1. Did the Youth Court exceed its statutory authority by imposing on revocation an additional three-year probationary term that lasts until S.M.K.-S.H's twenty-first birthday?*

¶18 S.M.K.-S.H.'s argument on this issue is predicated on two of our opinions that are distinguishable from the present case. The youth first contends that, pursuant to our opinion in *In re K.D.K.*, 2006 MT 187, 333 Mont. 100, 141 P.3d 1212, the Youth Court cannot expand its jurisdiction over a delinquent youth once a dispositional order has been entered. We noted in *In re K.D.K.* that the court could not order additional restitution

6

because the court no longer had jurisdiction to do so. *In re K.D.K.*, ¶ 21. We determined that K.D.K. "reached his eighteenth birthday having satisfied the conditions of his probation and, pursuant to the original disposition order, *his probation terminated on February 27, 2005.*" *In re K.D.K.*, ¶ 18 (emphasis added). That opinion does not support S.M.K.-S.H.'s argument because he had not turned eighteen and his probation had not terminated when the Youth Court extended his probationary period and—as S.M.K.-S.H. acknowledges—"the Youth Court had jurisdiction over [him] at the time it extended its jurisdiction for three years."

¶19   The youth further relies on *In re T.M.L.*, 2012 MT 9, 363 Mont. 304, 268 P.3d 1255, for the proposition that a youth court must "purposefully retain jurisdiction after a youth reaches the age of 18" in order to extend the youth's probationary period. That argument misapprehends our holding. In that case, the Youth Court placed T.M.L. on probation until his eighteenth birthday and ordered him to appear before the court for a transfer hearing after he turned eighteen. *In re T.M.L.*, ¶ 3. After the youth turned eighteen, he argued that the Youth Court had terminated its jurisdiction over him and no longer was authorized to transfer his case to the district court. *In re T.M.L.*, ¶ 10. We held that the Youth Court did not terminate its jurisdiction over the youth when he turned eighteen because the Youth Court "purposefully retained jurisdiction over T.M.L. when it required T.M.L., upon turning eighteen, to appear before the court for the purpose of a transfer hearing." *In re T.M.L.*, ¶ 15 (citing § 41-5-208, MCA). Although we held that a youth court purposefully may retain jurisdiction over a youth after his probation ends by

7

ordering him to appear for a transfer hearing pursuant to § 41-5-208, MCA, we did not state that a youth court is required to do so in order to modify a dispositional order before the youth's probation has terminated. *In re T.M.L.*, ¶ 15 (citing § 41-5-208, MCA).

¶20 The State argues that the Youth Court's second dispositional order "did not 'add three years to [S.M.K.-S.H.'s] commitment term.'" Instead, the State contends that the youth "was in effect 'resentenced' pursuant to the authority of Mont. Code Ann. § 41-5-1431(3)." We agree.

¶21 The statute provides that "[i]f a youth is found to have violated a term of probation, the youth court may make any judgment of disposition that could have been made in the original case." Section 41-5-1431(3), MCA. At the original dispositional hearing, the Youth Court was authorized by statute to impose a variety of dispositions for S.M.K.-S.H., including two relevant here. First, pursuant to § 41-5-1513(1)(b), MCA, the court could have "commit[ted] the youth to the [Department of Corrections] for placement in a state youth correctional facility and recommend to the department that the youth not be released until the youth reaches 18 years of age." Second, § 41-5-1512(1)(a), MCA, authorized the Youth Court to "place the youth on probation" and "retain jurisdiction" over the youth. At the original dispositional hearing, the court could have placed S.M.K.-S.H. on probation and "retain[ed] jurisdiction over [him] until [he reached] 21 years of age." *In re K.D.K.*, ¶ 20 (citing § 41-5-205, MCA). Prior to the second dispositional hearing, S.M.K.-S.H. entered a signed, written admission acknowledging that he had violated a term of his probation agreement. At the hearing,

8

the court correctly concluded that it could commit S.M.K.-S.H. to the Pine Hills Youth Correctional Facility until his eighteenth birthday and place him on probation until his twenty-first birthday because the court could have made both judgments of disposition at the original hearing.

¶22 The language of § 41-5-1431(3), MCA, plainly allows a youth court, after a youth is found to have violated a term of his probation, to enter any dispositional order that originally could have been made, even if such an order extends the youth's probation or his commitment to the court's jurisdiction. The Youth Court correctly interpreted and applied the Youth Court Act when it entered its second dispositional order and imposed an additional term of probation.

¶23 *2. Did the imposition of an additional three-year term of probation violate S.M.K.-S.H's constitutional right to equal protection of the laws?*

¶24 S.M.K.-S.H. contends that that he was denied his constitutional right to equal protection of the law when the Youth Court extended his probationary period by three years upon revocation. The youth alleges that "a similarly situated adult who committed the offense of Assault with a Weapon, and was serving a set probationary term of supervision, could not be subjected to an additional three year term upon revocation," whereas the Youth Court Act allows the court to impose a longer commitment term on revocation pursuant to §§ 41-5-1422(1) and -1431(3), MCA. In his reply brief, S.M.K.-S.H. clarified that his challenge should be regarded as "an 'as applied' argument."

¶25 The youth specifically asserts that, as applied to the facts of his case, these statutes in the Youth Court Act are unconstitutional under Article II, Sections 4 and 15 of the Montana Constitution. Article II, Section 4 provides in part that "[n]o person shall be denied the equal protection of the laws." Article II, Section 15 provides, "[t]he rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article unless specifically precluded by laws which enhance the protection of such persons." We have held that Article II, Section 15 must be read in conjunction with Article II, Section 4 because one of the "primary purposes of Article II, Section 15 was to remedy the fact that minors had not been accorded full recognition under the equal protection clause of the United States Constitution." *In re S.L.M.*, 287 Mont. at 35, 951 P.2d at 1372.

¶26 The basic premise of equal protection is "that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment." *Kershaw v. Mont. Dept. of Transp.*, 2011 MT 170, ¶ 17, 361 Mont. 215, 257 P.3d 358 (quoting *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 15, 353 Mont. 265, 222 P.3d 566). The first step in an equal protection analysis is to "identify the classes involved, and determine if they are similarly situated." *Jaksha v. Butte-Silver Bow Co.*, 2009 MT 263, ¶ 16, 352 Mont. 46, 214 P.3d 1248 (quoting *Reesor v. Mont. State Fund*, 2004 MT 370, ¶ 10, 325 Mont. 1, 103 P.3d 1019). If the classes are not similarly situated, "the first criterion for proving an equal protection violation is not met, and it is

not necessary for us to analyze the challenge further." *Kershaw*, ¶ 17 (quoting *Rausch v. State Comp. Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, 114 P.3d 192).

¶27 The State contends that S.M.K.-S.H. is not "similarly situated to an adult being sentenced to probation for the same offense." It notes that "[o]ffenders in the Youth Court system are not subject to the same criminal sanctions as adults since [the Youth Court Act] is 'designed to promote individual rehabilitation and allow young people to learn positive lessons from their transgressions.'" (quoting *In re Appeal of Cascade Co. Dist. Ct.*, 2009 MT 355, ¶ 14, 353 Mont. 194, 219 P.3d 1255). It further notes that some adults who commit assault with a weapon could be subjected to an additional commitment term on revocation, such as "an adult [who] had been granted a deferred sentence for assault with a weapon and later had the sentence revoked" pursuant to § 46-18-203(7)(a)(iv), MCA. We find the first point dispositive.

¶28 Where a youth in the youth court system faces a disposition different from an adult who has committed the same offenses, we have held that the youth and the adult "are not similarly situated with respect to Montana's sentencing laws for three reasons." *In re C.S.*, 210 Mont. 144, 146, 687 P.2d 57, 59 (1984). Those reasons are: (1) juvenile commitment under the Youth Court Act is "strictly for rehabilitation, not retribution"; (2) the "liberty interest of a minor is subject to reasonable regulation by the state, to an extent not permissible with adults" under the doctrine of *parens patriae*; and (3) other jurisdictions persuasively have concluded that "adults and juveniles are not similarly

11

situated in these circumstances." *In re C.S.*, 210 Mont. at 146-47, 687 P.2d at 59. We followed our reasoning from *In re C.S.* and applied its holding in *In re G.T.M.*, ¶¶ 12-13.

¶29 In *In re G.T.M.*, we distinguished *In re S.L.M.*, in which "this Court determined that youths sentenced as adults under the Extended Jurisdiction Prosecution Act (EJPA) and adults sentenced for committing the same offense are similarly situated classes for purposes of equal protection." *In re G.T.M.*, ¶ 12 (citing *In re S.L.M.*, 287 Mont. at 32-33, 951 P.2d at 1371). That was a markedly different factual scenario from the one presented in *In re C.S.*, where we noted that, regarding the offense charged in that case, "youths in the youth court system and adults in the criminal justice system faced different dispositions for committing the same offense." *In re G.T.M.*, ¶ 12. Ultimately, we determined that the classes in *In re G.T.M.* were not similarly situated because, like the youth in *In re C.S.* and unlike the youths in *In re S.L.M.*, G.T.M. faced "a different disposition for negligent arson as a youth in need of intervention in youth court than an adult would face in district court." *In re G.T.M.*, ¶ 13 (*comparing* § 41-5-345, MCA, *with* § 45-6-102, MCA).

¶30 S.M.K.-S.H. concedes that he "was not prosecuted under the Extended Jurisdiction Prosecution Act as were the youths in *S.L.M.*," and it is clear from the record that he has not been sentenced as an adult. Further, the State argues that "there are specific statutory provisions in place [in the Youth Court Act] to ensure minors are treated differently than adults." We recognized as much when we noted that in Montana, "youths are to be given special treatment by the courts" because the Youth Court Act is "designed to promote

individual rehabilitation" and because youths "are not subject to the same criminal sanctions as are adults." *In re Appeal of Cascade Co. Dist. Ct.*, ¶ 14. Like the youth in *In re C.S.* and *In re G.T.M.*, S.M.K.-S.H. faces a different disposition for assault with a weapon as a delinquent youth than an adult would face in district court. *Compare* § 41-5-1513 *with* § 45-5-213, MCA.

¶31 To the extent the statutes allow for different treatment of S.M.K.-S.H. and an adult convicted of assault with a weapon, the Youth Court's comments on the record illustrate why they are not similarly situated under the rationale of *In re G.T.M.* and *In re C.S.* At the dispositional hearing, the court stated that it wanted to ensure S.M.K.-S.H. was given the necessary support to make good life choices. Specifically, the court stated, "if we just have you released from Pine Hills at age 18 and there's no follow-up, nobody to go to . . . I'm not willing to say that we've given everything that we could possibly give to support you." Based on our review of the dispositional hearing transcript, the Youth Court made it clear that it was extending the youth's probationary period so that the youth could be more fully rehabilitated, consistent with the stated purpose of the Youth Court Act. *See* § 41-5-102, MCA. By allowing the court to enter any dispositional order that could have been made at the original dispositional hearing, § 41-5-1431(3), MCA, "provides the sentencing court with more flexibility in ensuring the long term supervision of youths convicted of serious offenses in district court." *Strong*, ¶ 26.

¶32 Citing *In re S.L.M.*, S.M.K.-S.H. also contends that his right to equal protection of the laws has been violated because he is now "'at risk' for consequences" under § 41-5-

13

208, MCA. Pursuant to that section, a youth court "*may*, on the youth's motion or the motion of the county attorney, transfer jurisdiction to the district court and order the transfer of supervisory responsibility from juvenile probation services to adult probation services." Section 41-5-208(1), MCA (emphasis added). Even if jurisdiction over him is transferred to the district court for supervisory responsibility, S.M.K.-S.H. will not necessarily be subjected to these "consequences." Unlike the youths in *In re S.L.M.*, S.M.K.-S.H. has not had a youth sentence *and* an adult sentence imposed on him, so he does not face the same "legitimate and realistic fear" that he will be sentenced as an adult. Furthermore, unlike the youths in *In re S.L.M.*—who could have been committed to both a youth sentence and then an adult sentence—S.M.K.-S.H. "may not be held in a state youth correctional facility for a period of time in excess of the maximum period of imprisonment that could be imposed on an adult convicted" of the same offense. Section 41-5-1522(1), MCA.

¶33 The court listened to the youth's concerns about § 41-5-208, MCA, and determined that the court would "have to cross that bridge if needed" at a later date. The Youth Court correctly determined that S.M.K.-S.H.'s objection on this point is not ripe for review because the youth can only point to "hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Reichert v. State*, 2012 MT 111, ¶ 54, 365 Mont. 92, 278 P.3d 455.

¶34 S.M.K.-S.H.'s equal protection claim fails because the youth is not similarly situated with adults sentenced for the same crime. Furthermore, the Youth Court

14

extended S.M.K.-S.H.'s probation to enhance his protections and to provide him with additional support to make good life decisions. The Youth Court's actions were consistent with the stated goals of the Youth Court Act and with our interpretation of the equal protection guarantees of the Montana Constitution. *Strong*, ¶ 26. Since the youth received "all the fundamental rights" guaranteed by the constitution, we need not further consider his claims under Article II, Section 15. For those reasons, we hold that the imposition of an additional three-year term of probation pursuant to §§ 41-5-1422(1) and -1431(3), MCA, did not violate S.M.K.-S.H's constitutional right to equal protection of the laws.

¶35   For the foregoing reasons, the dispositional order of the Youth Court is affirmed.


/S/ BETH BAKER


We concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS