No. 84-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

RUSSELL WOODS,

        Defendant and Appellant.

---

APPEAL FROM:  The District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        O'Brien Law Office; James P. O'Brien, Missoula,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Judy Browning, Asst. Atty. General, Helena, Montana
        Robert L. Deschamps, III, County Attorney, Missoula
        Karen Townsend & Ed McLean, Deputy County Attorneys,
        Missoula, Montana

---

Submitted on briefs: Nov. 29, 1985

Decided: April 10, 1986

Filed APR 10 1986

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The appellant, Russell Woods, was charged by information with two counts of burglary, one count of escape, and one count of tampering with a witness. He pled not guilty. At trial by jury he was found guilty on all charges. The District Court designated him a dangerous offender and sentenced him to 20 years for each count of burglary, 10 years for tampering with a witness, and 6 months in jail for escape. The prison sentences were to run consecutively. This appeal followed.

We affirm.

Four issues are presented for review:

1. Whether a juror's nondisclosure of information during voir dire is grounds for reversal.

2. Whether § 45-7-206(1), MCA, violates the appellant's state and federal constitutional rights of freedom of expression and due process of law.

3. Whether there is sufficient corroborative evidence to confirm accomplice testimony that the appellant committed burglary.

4. Whether a note addressed to the appellant was properly admissible.

In the late evening hours of December 13, 1983, Timothy Horrocks and Wayne Conger went to the Trading Post Saloon in Missoula, Montana. There they met the appellant, Russell Woods, who was a friend of Conger. When this bar closed they continued their drinking at Conger's trailer house in Missoula. They then left Missoula in Conger's automobile, traveling south towards Lolo, Montana.

At about 6:00 a.m. on December 14, 1983, Dennis McKeehan, Lolo Tavern's assistant manager who lived in a trailer house behind the tavern noticed Conger's automobile parked near the tavern. He asked Conger if assistance was needed. Conger asked for a flashlight. After getting a flashlight, McKeehan saw the appellant run out of the tavern's emergency exit with what looked like a tire iron in his hand. McKeehan ran back into the trailer and asked a friend to call the police. He then observed Conger's automobile being driven away. A later check revealed that the tavern's cash register had been disturbed.

The appellant and his two companions then proceeded west toward Lolo Hot Springs where they stopped at a filling station. A night attendant at the filling station was sleeping. He woke up and observed the appellant and another person approach the station. He then hid under his blankets. After they left he discovered that someone had tampered with the cash register. It was later discovered that a radio had also been taken out of a wrecker at the station.

The appellant and his two companions then proceeded back towards Lolo where they were spotted by a deputy sheriff and apprehended. After a stop at the Lolo Tavern for identification, Conger and Horrocks were transported in one vehicle and the appellant was transported in another towards Missoula. The appellant, although cuffed, succeeded in unbuckling his seat belt twice. While being moved from the highway patrol car in which he was riding to the deputy sheriff's car for more secure transport he broke free and ran. He was soon captured again.

While the three suspects were in the Missoula County jail the appellant wrote several notes to his companions.

One note was intercepted by a jailer and another was delivered to the sheriff's department by the recipient. Both notes were attempts by the appellant to establish a story as to what the three should all say occurred. At trial, Horrocks testified that the appellant had broken into the Lolo Hot Springs service station. Conger testified that the appellant had complained, "We only got thirty dollars." After trial, the jury found appellant guilty of burglary, escape and witness tampering.

The first issue presented is whether a juror's nondisclosure of information during voir dire is grounds for reversal. We hold that the conviction stands despite the nondisclosure.

During voir dire those persons of the jury panel sitting in the jury box were asked whether they had ever been victims of any crime. Following a lunch recess, a member of the panel was dismissed and Juror Tollefson took her place. The prosecuting attorney asked:

> Q. Mr. Tollefson, when I was questioning the prospective jurors earlier this morning, did you have any definite responses to any of the questions I was asking? A. No.

> Q. Any reason why you can't sit? A. No.

Juror Tollefson eventually became the foreman of the jury which found the appellant guilty of two counts of burglary. In another case a few days later, Mr. Tollefson again sat on a jury panel. In response to questioning, Mr. Tollefson acknowledged he had been burglarized three times. The appellant contends Mr. Tollefson's nondisclosure of this information during voir dire preceding his trial, and his eventual position as jury foreman, prejudiced the appellant's right to an impartial jury and his right to due process.

- 4 -

We disagree. In State v. Bauer (Mont. 1984), 683 P.2d 946, 953, 41 St.Rep. 1066, 1073, we held that nondisclosure, without more, does not amount to misconduct tending to prejudice the appellant. Here, as in _Bauer_ the omission appears to have been inadvertent and unintentional. Where the nondisclosure does not amount to intentional concealment and no further evidence of bias is proven, there are no grounds for reversal. _Id._

Next, the appellant contends that § 45-7-206(1)(a), MCA, violates state and federal constitutional rights to freedom of expression and due process of law. That statute provides:

> _Tampering with witnesses and informants._ (1) A person commits the offense of tampering with witnesses and informants if, believing that an official proceeding or investigation is pending or about to be instituted, he purposely or knowingly attempts to induce or otherwise cause a witness or informant to:
>
> (a) testify or inform falsely;
>
> . . .

First, we turn to the due process issue. Appellant argues that the statute, both on its face and as applied, is so vague that it violates the Fourteenth Amendment to the United States Constitution and Art. II, § 7 of the Montana Constitution. The general rule is that a statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. United States v. Harris (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989; City of Choteau v. Joslyn (1984), 678 P.2d 665, 668, 41 St.Rep. 492, 497. Appellant contends that the terms "investigation" and "about to be instituted" are not defined in the criminal code, nor is their meaning clarified by their context. Furthermore, the appellant maintains the phrase "knowingly attempts to induce or

- 5 -

otherwise cause a witness or informant to testify falsely" does not indicate when conduct becomes criminal.

When the statute is read as a whole, the meanings of the terms are evident. Any person of ordinary intelligence would understand the meaning of "investigation" to include inquiry by public officials, whether police or court officers. Furthermore the language, "believing that an investigation is pending or about to be instituted" modifies the next phrase: "purposely or knowingly attempts to induce or otherwise cause a witness to: (a) testify or inform falsely." Placed in this context, there is no doubt that the conduct proscribed by the statute are acts designed to mislead factfinders who are investigating or who are about to begin an inquiry.

The statute, as applied to the appellant, is also without constitutional defect. The appellant, while awaiting trial wrote two letters to his co-defendants concerning the testimony to be presented at trial. The appellant maintains these were innocent discussions about testimony. The jury found these notes to be attempts to cause false testimony. We have no difficulty in holding that the statute makes clear that the act proscribed is inducement of false testimony while believing an investigation has been or is about to be instituted. Appellant, at the time he wrote the notes, was under arrest for suspected burglary. He wrote the notes in order to elicit testimony which would exculpate him. That he knew the testimony he sought would be false is evident from the opening sentence of one note which stated, "If the kid goes for it here's the story." The statute as applied is not unconstitutionally vague.

The appellant also contends the statute is so broad in what it prohibits, that it violates his rights of free speech

- 6 -

under the First Amendment to the United States Constitution and under Art. II, § 7 of the Montana Constitution. The crucial inquiry here is whether the statute sweeps within its prohibitions that speech which may not be punished constitutionally. Grayned v. City of Rockford (1972), 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231; City of Whitefish v. O'Shaughnessy (Mont. 1985), 704 P.2d 1021, 1026, 42 St.Rep. 928, 932.

Initially, we must note that the right to freedom of speech is not absolute. Speech may properly be regulated if the regulating statutes are narrowly and precisely designed. City of Whitefish, 704 P.2d at 1025, 42 St.Rep. 928, 932. As we have explained above, the statute has been precisely drawn to prohibit only speech designed to induce false testimony. Next then, the state's interest in prohibiting the solicitation of false testimony must be balanced with defendant's right to speak his mind.

The defendant's right to speak is not limited to speaking the truth. As Justice Holms remarked, "the best test of truth is the power of the thought to get itself accepted in the competition of the market . . ." Abrams v. United States (1919), 250 U.S. 616, 630 (Holmes, J., joined by Brandeis J., dissenting). The difficulty here is that solicitation of false testimony is not subject to the test of the marketplace. It is always surreptitious and, if undiscovered, remains unrefuted. Therefore the usual tools under our system of government for exposing falsehood, those being counterargument and education, are unavailable. See Linmark Assoc., Inc. v. Township of Willingboro (1977), 431 U.S. 85, 97, 97 S.Ct. 1614, 1620, 52 L.Ed. 155, 164-165; Wood

v. Georgia (1962), 370 U.S. 375, 389, 82 S.Ct. 1364, 1372, 8 L.Ed.2d 569, 579.

Placing this inducement of deception in its context heightens the urgency with which it must dealt. The right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government. Wood v. Georgia (1962), 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569, 576. Justice Frankfurter has noted, and we agree, that one of the "substantive evils with which legislation may deal is the hampering of a court in a pending controversy, because the fair administration of justice is one of the chief tests of a true democracy." Pennekemp v. Florida (1946), 328 U.S. 331, 353, 66 S.Ct. 1029, 1041, 90 L.Ed. 1295, 1307.

To justify prohibiting speech, the threat posed by the speech to the fair administration of justice "must constitute an imminent, not merely a likely [danger]." Craig v. Harney (1947), 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546, 1552. Attempting to induce or cause false testimony poses just such an imminent threat to the fact-finding aspect of the trial process. Orchestrated false testimony, if carefully done, could evade even the most thorough cross-examination. It could also survive the introduction of contrary physical evidence or testimony. The crucial nature of truthful testimony is evidenced by the oath administered to witnesses and the seriousness with which society and the law regard perjury.

Because witness tampering presents an imminent threat to the trial process, an aspect central to our democratic society, and because § 45-7-206(1)(a) is narrowly drawn to address that threat, we hold that section does not violate

the Montana or federal constitutional guarantees of the right to free speech.

The next issue presented by the appellant concerns whether there was sufficient corroborative evidence to confirm testimony at trial by the accomplices to the crime that the appellant committed burglary. Section 46-16-213, MCA, mandates that accomplice testimony be corroborated by other evidence which tends to connect the appellant with the charged offense. In State v. Case (Mont. 1980), 621 P.2d 1066, 1070, 37 St.Rep. 2057, 2060-2061, we explained:

> To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him. Corroborating evidence may be circumstantial and can come from the defendant or his witnesses.. . . (Citations omitted.)

With these rules in mind we turn to the evidence presented at trial to corroborate the testimony by Conger and Harrocks that the appellant committed burglary.

Glen Fuller, an attendant at the Lolo Hot Springs service station, who was inside the station during the burglary testified that he saw the appellant and Harrocks get out of a car and move toward the station. Fuller then hid in the station's bunk room. He testified he heard people come into the station and leave. Then he checked the cash register and saw that it had been broken into. Robert Sharp, another attendant at the station testified that when he arrived at work on the morning of the burglary, he observed that the cash register was open and money was missing. Finally there are the notes written by the appellant himself discussing the events surrounding the burglary.

This evidence presented at trial, and judged for its credibility by the jury, surely is enough to tend to connect the appellant with the burglary. We cannot disturb the finding of the jury that the appellant did commit the burglary.

Finally the appellant contends the District Court erred in admitting into evidence a note addressed to the appellant and written by two other inmates. The note was intercepted by jailors before it reached the appellant. The note contained offers by the two inmates to "talk sense" into Harrocks--with physical force if necessary. While this note is obviously relevant to whether the witness Harrocks was being solicited to give false testimony, it is hearsay. The State contends the note was offered to prove the witness's state of fear. However, the inference that the witness was fearful cannot be reached without the intermediate inference that the inmates actually attempted to "talk sense" into the witness. The note, then, was offered by the State to prove the contents of the note and, as such, is inadmissible hearsay. Rule 801(c), M.R.Evid. However, the note constituted cumulative evidence in that the charge of witness tampering is also supported by the substantial credible evidence of Harrock's testimony and the notes written by the appellant, himself. The District Court by admitting the note erred, but the error was harmless.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices