No. 05-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 14

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

JONATHON MAINWARING,

       Defendant and Appellant.


APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2003-0913,
Honorable Susan P. Watters, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

              Penelope S. Strong, Chief Public Defender, Yellowstone County Public
Defender's Office, Billings, Montana

       For Respondent:

              Hon. Mike McGrath, Montana Attorney General, Jennifer Anders,
Assistant Attorney General, Helena, Montana

              Dennis Paxinos, Yellowstone County Attorney, Mark Murphy,
Deputy County Attorney, Billings, Montana


Submitted on Briefs:  June 28, 2006

Decided:  January 23, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     In 1999, at the age of sixteen, Jonathon Mainwaring (Mainwaring) was convicted of mitigated deliberate homicide and sentenced as an adult by the Valley County District Court to the Department of Corrections (DOC) for a term of 30 years, with 20 years suspended.  Less than five years later, after he turned 21 and after the remainder of his sentence had been suspended, Mainwaring committed felony assault on a minor. Following the filing of assault charges in the Yellowstone County District Court, the State filed notice of its intent to designate Mainwaring as a "persistent felony offender" (PFO).  Mainwaring moved to strike this notice but the Yellowstone County District Court denied his motion.  The District Court subsequently sentenced Mainwaring as a PFO.  Mainwaring appeals.  We affirm.

## ISSUE

¶2     A restatement of the issue is whether the Yellowstone County District Court erred in sentencing Mainwaring as a persistent felony offender predicated upon his 1999 felony conviction under § 41-5-206, MCA, of the Youth Court Act.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Mainwaring was initially charged in 1999 with deliberate homicide and aggravated assault.  Shortly after the Information was filed in the Valley County District Court, the court held a hearing under § 41-5-206, MCA, to determine whether Mainwaring's case should remain in district court or be returned to youth court.  The court determined the case would remain in district court and that Mainwaring would be

tried as an adult. Counsel was appointed to represent Mainwaring and he entered a not guilty plea.

¶4 As part of a subsequent plea agreement, a copy of which is not available in the record of the current case, the State amended the Information to add the charge of mitigated deliberate homicide.[1] Mainwaring entered a guilty plea to this charge. The Valley County court accepted the plea, ordered a pre-sentence investigation and set a sentencing hearing.

¶5 After approximately ten hours of evidence and argument was presented at the sentencing hearing, the Valley County District Court informed Mainwaring that it would not follow the sentencing recommendation set forth in the plea agreement. As a result of this decision, the court offered Mainwaring the opportunity to withdraw his plea. After consulting with counsel, Mainwaring declined to withdraw his plea. The Valley County court then proceeded to sentence Mainwaring under § 41-5-2503(1)(a), MCA, of the Criminally Convicted Youth Act (CCYA), which expressly provides that the district court "shall impose any sentence allowed by the statute that established the penalty for the offense of which the youth is convicted as if the youth were an adult and any conditions or restrictions allowed by statute."

¶6 In 2002, upon Mainwaring's motion and as provided for in § 41-5-2510, MCA, the Valley County District Court reviewed and then suspended the remainder of Mainwaring's original sentence upon a finding that Mainwaring had been "substantially

---

[1] A subsequent order issued by the Valley County District Court, and made a part of the record in the case before us, summarizes in detail Mainwaring's 1999 proceeding.

rehabilitated." The court replaced the original sentence with various terms, conditions and restrictions. Approximately eighteen months later in October 2003, and just after turning 21 years old, Mainwaring violated the conditions of his suspended sentence by assaulting a young child. The Valley County District Court revoked his suspended sentence, and the State brought a felony "assault on a minor" charge against Mainwaring in the Yellowstone County District Court. The State also filed a timely notice to seek PFO designation for Mainwaring predicated upon his 1999 felony conviction. Mainwaring sought to strike the PFO designation but the Yellowstone County court denied his motion. The court thereafter designated him a PFO and sentenced him to 20 years at Montana State Prison (MSP), to run concurrently with his re-imposed Valley County District Court sentence. Mainwaring filed a timely notice of appeal.

## STANDARD OF REVIEW

¶7 We review criminal sentences for legality. When reviewing sentences for "legality," one thing we determine is whether the sentencing court had statutory authority to impose the sentence; in other words, whether the sentence falls within the parameters set by the applicable sentencing statutes. We review such questions of law de novo. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.

## DISCUSSION

¶8 The primary question before this Court is whether a district court can properly designate an adult offender a PFO based upon a prior felony conviction that was obtained under § 41-5-206, MCA, (hereinafter referred to as "206 transfer" statute) of the Youth Court Act. Mainwaring contends, on constitutional grounds, that it cannot.

4

¶9    The following statutes are relevant to our analysis: Persistent Felony Offenders, §§ 46-18-501, et seq., Youth Court Act, §§ 41-5-101, et seq., and Criminally Convicted Youth Act, §§ 41-5-2501, et seq. We start by setting forth the pertinent provisions of these statutes, beginning with the definition of a PFO.

> *Section 46-18-501*, MCA (2003)
> A "persistent felony offender" is an offender who has previously been convicted of a felony and who is presently being sentenced for a second felony committed on a different occasion than the first. An offender is considered to have been previously convicted of a felony if:
> (1) the previous felony conviction was for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed;
> (2) less than 5 years have elapsed between the commission of the present offense and either:
> (a) the previous felony conviction; or
> (b) the offender's release on parole or otherwise from prison or other commitment imposed as a result of the previous felony conviction; and
> (3) the offender has not been pardoned on the ground of innocence and the conviction has not been set aside in a postconviction hearing.

¶10   The relevant Youth Court Act statutes in effect when Mainwaring committed the 1999 homicide provide:

> *Section 41-5-103(39)*, MCA (1999)
> "Youth" means an individual who is less than 18 years of age without regard to sex or emancipation.

> *Section 41-5-103(7)*, MCA (1999)
> "Criminally convicted youth" means a youth who has been convicted in a district court pursuant to 41-5-206.

> *Section 41-5-206*, MCA (1999), provides:
> (1) The county attorney may, in the county attorney's discretion and in accordance with the procedure provided in 46-11-201, file with the district court a motion for leave to file an information in the district court if:
> (a) the youth charged was 12 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act would if it had been committed by an adult constitute:

5

. . . .
(ii) deliberate homicide as defined in 45-5-102;
(iii) mitigated deliberate homicide as defined in 45-5-103;
. . . .
(3) The district court shall grant leave to file the information if it appears from the affidavit or other evidence supplied by the county attorney that there is probable cause to believe that the youth has committed the alleged offense. Within 30 days after leave to file the information is granted, the district court shall conduct a hearing to determine whether the matter must be transferred back to the youth court . . . .
(4) The filing of an information in district court terminates the jurisdiction of the youth court over the youth with respect to the acts alleged in the information. . . .
. . . .
(6) If a youth is found guilty in district court of an offense enumerated in subsection (1), the court shall sentence the youth pursuant to 41-5-2503 and Titles 45 and 46. . . .

¶11 Lastly, the Criminally Convicted Youth Act, enacted in1999, provides:

*Section 41-5-2503*, MCA:
(1) The district court, in sentencing a youth adjudicated in district court pursuant to 41-5-206, shall:
(a) impose any sentence allowed by the statute that established the penalty for the offense of which the youth is convicted as if the youth were an adult and any conditions or restrictions allowed by statute;
(b) retain jurisdiction over the case until the criminally convicted youth reaches the age of 21;
. . . .
(2) The district court shall review the criminally convicted youth's sentence pursuant to 41-5-2510 before the youth reaches the age of 21 if a hearing has not been requested under 41-5-2510.

*Section 41-5-2510*, MCA:
(1) When a youth has been convicted as an adult pursuant to the provisions of 41-5-206 . . ., the county attorney, defense attorney, or youth may, at any time before the youth reaches the age of 21, request a hearing to review the sentence imposed on the youth.
. . . .
(4) The sentencing court, after considering the criminal, social, psychological, and any other records of the youth; any evidence presented at the hearing; and any statements by the victim and by the parent or parents or guardian of the youth and any other advocates for the youth shall

6

determine whether the criminally convicted youth has been substantially rehabilitated based upon a preponderance of the evidence.

(5) In the event that the sentencing court determines that the youth has been substantially rehabilitated, the court shall determine whether to:

(a) suspend all or part of the remaining portion of the sentence, impose conditions and restrictions pursuant to 46-18-201, and place the youth on probation under the direction of the department, unless otherwise specified;

. . . .

(6) The sentencing court may revoke a suspended sentence of a criminally convicted youth pursuant to 46-18-203.

¶12 On appeal, Mainwaring argues that he was *convicted* in 1999 under the CCYA and that the use of such a conviction to designate him a PFO as an adult is basically unfair. Mainwaring misstates the nature of his conviction. While Mainwaring was, by definition, a "criminally convicted youth," he was *not* convicted under the CCYA.

¶13 As indicated above, in 1999, Mainwaring entered a guilty plea in Valley County District Court as an adult. He was, therefore, *convicted* in district court, under the "206 transfer" statute, of mitigated deliberate homicide which is a violation of § 45-5-103, MCA. He was subsequently *sentenced* "as if [he] were an adult" in accordance with § 41-5-2503(1)(a), MCA, of the CCYA. See also *State v. Whiteman*, 2005 MT 15, 325 Mont. 358, 106 P.3d 543, affirming the propriety of prosecuting and sentencing certain youthful offenders in district court as adults. With the exception of the prohibition against confining a youth under age 16 in a state prison facility, a conviction in district court under § 41-5-206(6), MCA, is equivalent to any other adult felony prosecution or conviction. By contrast, the CCYA is not an act under which a youth is convicted; rather, it is a procedural mechanism comprised primarily of a sentencing provision applicable to

7

youths convicted in the adult system, § 41-5-2503, MCA, and a sentence review provision available to them until they turn 21, § 41-5-2510, MCA.

¶14    We now turn to Mainwaring's argument that the Yellowstone County District Court erred in designating him a PFO, thus entitling him to be re-sentenced.  He first claims that the Legislature did not intend the PFO statute to apply to a criminally convicted youth because the PFO statute, the CCYA statutes, and the "206 transfer" statute do not reference each other.  While this is true, we are not persuaded that this precludes application of the PFO statutes to cases such as this.  There is no language in the Youth Court Act or the CCYA that expressly precludes application of the PFO statutes to youthful offenders.  Additionally, the PFO statutes do not contain language precluding their application to criminally convicted youths.  In fact, the PFO statutes do not distinguish between felony convictions obtained against youths and adults in district court.  Again, as stated above, with a few exceptions, a youth who is tried, convicted and sentenced under the "206 transfer" provision is treated as an adult offender.

¶15    As we have previously articulated, when interpreting a statute, we must follow the rule set forth in § 1-2-101, MCA—we must simply ascertain and declare what is in terms or in substance contained therein, not insert what has been omitted or omit what has been inserted. *Montana Power Co. v. Public Service Com'n,* 2001 MT 102, ¶ 26, 305 Mont. 260, ¶ 26, 26 P.3d 91, ¶ 26 (citation omitted).  There is simply no language in any of these statutes that would preclude their application to cases falling under the other statutory schemes.   Section 46-18-501, MCA, clearly defines "persistent felony offender."  In *State v. Damon*, 2005 MT 218, ¶ 37, 328 Mont. 276, ¶ 37, 119 P.3d 1194,

8

¶ 37 (citations omitted), we held that "[a] district court possesses the authority to designate and sentence a persistent felony offender pursuant to § 46-18-502, MCA, when the underlying charge meets the definition of a felony and the State has provided proper notice of its intent to seek persistent felony offender status under § 46-13-108, MCA." Despite Mainwaring's protestations and policy arguments to the contrary, his case falls squarely within this framework.

¶16   While it is a fundamental violation of due process to predicate a criminal sentence on materially false information (*See Bauer v. State*, 1999 MT 185, ¶ 27, 295 Mont. 306, ¶ 27, 983 P.2d 955, ¶ 27), Mainwaring acknowledges that the information regarding his 1999 conviction was *not* false.  Due process requires that an offender be given an opportunity to explain, argue, and rebut any information, including pre-sentencing information that may lead to a deprivation of life, liberty, or property.  *Bauer*, ¶ 22 (citation omitted).   Mainwaring was represented by counsel throughout his 1999 proceeding, and a *Butler*[2] hearing was held providing Mainwaring a full opportunity to present evidence and arguments concerning the appropriate forum for the prosecution of his case.  *State v. McKee*, 2006 MT 5, ¶ 21, 330 Mont. 249, ¶ 21, 127 P.3d 445, ¶ 21. There is no evidence or allegation to the contrary.  Nor is there any claim that either the Valley County District Court or the Yellowstone County District Court relied on materially false information in sentencing Mainwaring for either felony; thus there is no due process violation requiring re-sentencing.   Moreover, Mainwaring received the

---

[2] *State v. Butler*, 1999 MT 70, 294 Mont. 17, 977 P.2d 1000 (overruled on other grounds by *State v. McKee*, 2006 MT 5, 330 Mont. 249, 127 P.3d 445).

9

statutorily-required notice when the State filed timely notice, as required by § 46-13-108, MCA, of its intent to designate Mainwaring a PFO.

¶17 The remainder of Mainwaring's "due process" argument appears to be that he did not as a minor have adequate "notice" that he could one day be subject to PFO designation, and therefore he did not have the opportunity to conform his conduct in accordance with such notice. In this connection, Mainwaring also argues that the CCYA and the PFO statutes, taken together, are void for vagueness as applied to him and in general. This assertion rests on the argument that these statutes, particularly the definition of "felony offender," do not explicitly advise a criminally convicted youth that his or her conviction obtained before becoming an adult can qualify him or her for a PFO designation in the future.

¶18 The test for "vagueness" of a criminal law is whether a person is required to speculate as to whether his contemplated course of action may be subject to criminal penalties. *State v. Brogan*, 272 Mont. 156, 168, 900 P.2d 284, 291 (1995). We do not agree with Mainwaring's argument that the statutory schemes contain "highly technical, legal language which is obscure to the ordinary adult," and youth in our society. As discussed above, the relevant statutes adequately indicate what conduct is proscribed and what penalty may be imposed. The statutes are written using common terms and everyday language, and therefore it is presumed that a reasonable person of average intelligence can comprehend them. *State v. Martel*, 273 Mont. 143, 150, 902 P.2d 14, 18-19 (1995). Moreover, Mainwaring was represented by counsel throughout his 1999 proceeding. The Judgment expressly stated that the Valley County court would retain

10

jurisdiction over Mainwaring's case until he reached the age of 21, and that Mainwaring would be under the supervision of the Adult Probation and Parole Bureau for the duration of his sentence, i.e., until he was approximately 47 years old.

¶19 Mainwaring was 21 years old at the time he assaulted a 20-month old child. The PFO statute clearly and unequivocally establishes the grounds under which the State may seek PFO status. We conclude the challenged statutes are not void for vagueness, nor do they provide deficient notice of the situations to which the PFO designation could apply.

¶20 Finally, Mainwaring argues for the first time on appeal that his equal protection rights were violated. We have previously held that "[a] constitutional issue is waived if not presented at the earliest opportunity." *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 37, 307 Mont. 60, ¶ 37, 36 P.3d 874, ¶ 37 (citing *Billings Deaconess Hosp. v. Angel*, 219 Mont. 490, 495, 712 P.2d 1323, 1327 (1986)(superseded by statute as stated in *Haider v. Frances Mahon Deaconess Hosp.*, 2000 MT 32, 298 Mont. 203, 994 P.2d 1121); *Dodd v. City of East Helena*, 180 Mont. 518, 523, 591 P.2d 241, 244 (1979)). Mainwaring did not previously object at the hearing or in any post-hearing motions that his sentence violated the Equal Protection Clause. We conclude that he did not raise this claim at the earliest opportunity and therefore waived it. We decline to invoke the doctrine of plain error to review this issue.

## CONCLUSION

¶21 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

11

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS