DA 12-0457

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 49

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

RANDY BILL RING,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, DDC 2011-57, Honorable James P. Reynolds, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Deborah S. Smith, Clinical Professor, University of Idaho College of Law, Legal Aid Clinic, Moscow, Idaho

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Leo J. Gallagher, Lewis and Clark County Attorney, Tara Harris, Deputy County Attorney, Helena, Montana

                Submitted on Briefs:  January 22, 2014
                           Decided:  February 25, 2014

Filed:

_____
                    Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Randy Bill Ring (Ring) appeals from the judgment of Montana First Judicial District Court, Lewis and Clark County, following his jury conviction for incest in violation of § 45-5-507, MCA.  We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

## ISSUES

¶2     We review the following issues:

> *1.     Did the District Court abuse its discretion and correctly apply this Court's decision in* <u>Anderson</u> *when it prohibited Ring from examining the victim out of the presence of the jury regarding alleged false accusations of sexual assault?*
>
> *2.     Did a jury instruction stating that intoxication is not a defense violate Ring's right to due process, when he testified that he had taken prescription medication?*
>
> *3.     Did the District Court abuse its discretion when it denied Ring's motion for a new trial based on an allegation of juror bias?*
>
> *4.     Did the District Court err when it imposed conditions of the sentence that imposed restitution in an unspecified amount and ordered Ring to pay for the cost of his incarceration?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On February 2, 2011, Ring's then twenty-four-year-old daughter, S.H., was staying with him with her two children, ages seven and two.  S.H. does not own a car.  S.H. had come to stay with Ring after a falling out with her mother, with whom she had been staying previously.  Another woman and her eight-year-old daughter were also staying in Ring's three bedroom house at the time.  Ring slept in one bedroom, while each woman shared a

bedroom with her child or children. The other woman was out of town on February 2, but her daughter was at Ring's house.

¶4     S.H., Ring, and the children ate dinner, then watched television. S.H. drank some liquor. Around 8:30 or 9:00 p.m., S.H. put the children to bed. After she had put the children to bed, S.H. testified that Ring made her a Captain Morgan spiced rum and water in a "regular-size bar" glass. Then, she went out to the garage and smoked about half a gram of marijuana and a cigarette. When she returned to the house she testified she was "buzzed," but not incapacitated. She testified that Ring handed her a third, stronger, Captain Morgan and water drink. She was sipping it, then chugged it after Ring made fun of her for drinking it too slowly. After chugging the drink, S.H. testified, she was "pretty much black-out drunk." She testified that she got up and went to sleep in Ring's bed because she did not want to disturb her sleeping children. She "pretty much laid down and passed out" with all her clothes on. She testified: "I remember waking up with—with him on top of me. . . . And, like, I couldn't move. And I didn't want to scream or do anything because there were kids in the house. I remember heavy breathing and him just kind of talking to himself." S.H. just laid there and "took it" because she was "blacked out" and he was too big to push off of her. When "everything got finished" she went into her bedroom and, at 3:30 in the morning, called people to come pick her up. Her brother came and picked her up at 8:00 a.m. the next day. She showed him some text messages she received from Ring. The messages read:

> Why did u call patti to come get u at three thirty this morning
>
> U started it and it has been along time. If u did not what it to happen all u had to do is say no. I am sorry but it was just as much as me. I think this should be kept between us

3

When she told her brother what had happened, he called the police.

¶5     Ring's version of events differs. Ring is a veteran who suffers from pain, for which he is prescribed medications. To manage his pain, he is prescribed one hydrocodone pill per day and two Naproxen, twice a day. He testified that he was suffering from pain on February 2, 2011, and also had a cold. Before he went to bed, around 11:30 p.m., he had taken four hydrocodone pills, as well as three Naproxen and NyQuil Nighttime. He had been taking Tylenol Cold—and some morphine—during the day. He testified that he never poured S.H. any drinks. Instead, he testified that S.H. poured her third drink while she was on the phone with her brother, and that he went to bed before S.H. did. He was wearing his underwear and had put on the breathing machine he uses to treat his sleep apnea. After Ring was asleep, he testified, S.H. came into the room. She woke him up, saying she was cold and asking him to hold her. He said no. She slept on top of the covers with a blanket, initially, but somehow ended up nude, under the covers. He testified that she initiated the sexual contact, but also that he was asleep or barely aware at the time, and that he stopped the contact as soon as he realized what was happening. The next day, when interviewed by a detective, he admitted that he had intercourse with S.H..

¶6     Ring was charged by Amended Information with incest, a felony, in violation of § 45-5-507, MCA. Following a three-day jury trial, he was found guilty of the offense.

¶7     Before trial began, Ring's counsel filed subpoenas duces tecum to discover evidence related to past, allegedly false, accusations of rape S.H. had made against other men in her life. The State filed a motion in limine to exclude such evidence on the grounds that it would

4

not be admissible at trial. The discovery attempt uncovered a one-page, Child and Family Services report written by a social worker, which referred to one such incident. The allegations referred to in the report, which were not documented in any sort of detail, had not been adjudicated or admitted to be false. On the day trial began, the District Court refused Ring's counsel's request to question S.H. to locate documentation of any additional accusations. The court further determined that the evidence pertaining to the documented previous accusation was not admissible, pursuant to this Court's decision in *State v. Anderson*, 211 Mont. 272, 686 P.2d 193 (1984).

¶8 Over Ring's objection, the District Court submitted to the jury an instruction concerning the effect of being in an "intoxicated condition," which essentially reiterated the provisions of § 45-2-203, MCA. The jury instruction provided that intoxication from having ingested "intoxicating substances" is not a defense to the mental state element of a crime. The instruction, as permitted by §§ 45-2-203, 45-2-101(32) and 50-32-224(1)(a)(x), MCA, specified that hydrocodone is an "intoxicating substance."

¶9 Following Ring's conviction by the jury, Ring's counsel learned that one of the jury members had been a victim of incest. The jury member had not disclosed her experience during voir dire. Ring's counsel moved for a new trial, arguing that the nondisclosure amounted to intentional concealment. The court concluded that investigation of the issue was necessary and conducted a hearing. The juror submitted a statement that Ring's counsel had never asked whether she had been a victim of incest, only whether she could hear the case fairly and impartially. The juror felt that she could, in part because the incest she experienced happened during childhood, whereas S.H. was an adult. In fact, she had initially

5

doubted that Ring was guilty. The District Court denied Ring's motion after considering the juror's statement and the voir dire transcript. The court observed that, because neither counsel asked if any member of the jury pool was a victim of incest, the juror's decision not to disclose that history was not intentional concealment. In addition, she had shown no indication of bias.

¶10 The District Court sentenced Ring to twenty years in the Montana State Prison, imposing twenty-one "conditions" on his sentence. These conditions included requirements that he pay "all future medical expenses that his victim can reasonably be expected to incur" as a result of his conduct, as well as "all future costs of incarceration and medical costs while incarcerated."

¶11 Ring appeals.

## STANDARDS OF REVIEW

¶12 This Court reviews a district court's evidentiary rulings for an abuse of discretion. *Puccinelli v. Puccinelli*, 2012 MT 46, ¶ 12, 364 Mont. 235, 272 P.3d 117. Notwithstanding this deferential standard, however, judicial discretion must be guided by the rules and principles of law; thus, our standard of review is plenary to the extent that a discretionary ruling is based on a conclusion of law. *Puccinelli*, ¶ 12. In such circumstances, we review a district court's decision de novo, to determine whether the court interpreted the law correctly. *Puccinelli*, ¶ 12.

¶13 We review jury instructions "to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law." *State v. Myran*, 2012 MT 252, ¶ 16, 366 Mont. 532, 289 P.3d 118 (quotation omitted). District courts are given broad discretion

6

when instructing a jury and reversible error occurs only if the jury instructions prejudicially affect the defendant's substantial rights. *Myran*, ¶ 16. Statutes are presumed constitutional and the challenger bears the burden of proving that the statute is unconstitutional beyond a reasonable doubt; any doubts are resolved in favor of the statute. *Myran*, ¶ 16.

¶14 A district court's ruling on a motion for a new trial and its decision as to the impartiality of a jury should not be set aside unless there is an abuse of discretion. *State v. Dunfee*, 2005 MT 147, ¶ 14, 327 Mont. 335, 114 P.3d 217. The trial court is in the best position to observe the jurors and to decide the potential for prejudice when allegations of juror misconduct are raised. *State v. Rennaker*, 2007 MT 10, ¶ 29, 335 Mont. 274, 150 P.3d 960. Thus, the trial court's determination is given considerable weight by this Court and we will defer to the trial court's determination absent a showing of prejudice. *Rennaker*, ¶ 29.

¶15 This Court reviews criminal sentences for legality. *State v. Mainwaring*, 2007 MT 14, ¶ 7, 335 Mont. 322, 151 P.3d 53. "When reviewing sentences for 'legality,' one thing we determine is whether the sentencing court had statutory authority to impose the sentence; in other words, whether the sentence falls within the parameters set by the applicable sentencing statutes." *Mainwaring*, ¶ 7. This presents a question of law, which we review de novo. *Mainwaring*, ¶ 7.

**DISCUSSION**

¶16 *1. Did the District Court abuse its discretion and correctly apply this Court's decision in* <u>Anderson</u> *when it prohibited Ring from examining the victim out of the presence of the jury regarding alleged false accusations of sexual assault?*

¶17 In *Anderson*, this Court held that evidence of similar sexual offenses claimed to have been committed against the victim by other individuals is admissible *if the offenses were*

7

*proven or admitted to be false.* *Anderson*, at 284-85, 686 P.2d at 200. Admissible evidence of this nature is limited to that which may be narrowed to the issue of the complaining witness's veracity. *Anderson*, 211 Mont. at 284, 686 P.2d at 200. Evidence of prior charges which may be true or false is inadmissible. *Anderson*, 211 Mont. at 284-85, 686 P.2d at 200. *Anderson* also stated that, in order to establish whether there is sufficient support for the contention that the prior allegations are false, a separate hearing outside the jury's presence should be held. *Anderson*, 211 Mont. at 285, 686 P.2d at 200. One purpose of this rule is to avoid having the trial become "a trial of the victim." *See Anderson*, 211 Mont. at 285, 686 P.2d at 200.

¶18     In *State ex rel. Mazurek v. District Court of the Mont. Fourth Judicial Dist.*, 277 Mont. 349, 357, 922 P.2d 474, 479 (1996), we clarified that *Anderson* requires "that the district court conduct a hearing outside the presence of the jury to determine whether there is sufficient evidence to support the contention that the allegation was false." We explained that the hearing must address whether it is proper to question the witness regarding previous accusations, as well as the admissibility of the corroborative evidence. *Mazurek*, 277 Mont. at 358, 922 P.2d at 480. *Mazurek* adopts the direction articulated by the Nevada Supreme Court that:

> In making such a determination, the defendant must establish, by a preponderance of the evidence, that (1) the accusation or accusations were in fact made; (2) that the accusation or accusations were in fact false; and (3) that the evidence is more probative than prejudicial. . . . If the defendant satisfies these three conditions, the trial court will authorize cross-examination of the complaining witness concerning the alleged false accusations.

8

*Mazurek*, 277 Mont. at 358, 922 P.2d at 480 (quoting *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989)).

¶19    Ring argues that the District Court refused his request to question S.H. about the existence and veracity of previous allegations based on an incorrect reading of *Anderson*. As the State points out, however, neither *Anderson* nor *Mazurek* suggested that a hearing can be used to examine the complaining witness on the stand if there is no evidence that the witness has made a prior false allegation. *Anderson* does not require the court to allow a party to question the victim on the day of trial in order to locate potential evidence of past accusations. The District Court did not abuse its discretion when it denied Ring's request to question S.H. on the day of trial in order to locate potential evidence.

¶20    The District Court correctly interpreted *Anderson* when it denied Ring's request to question S.H. after determining that, to the extent evidence of previous accusations existed, it was inadmissible. Ring's pretrial motion for discovery related to S.H.'s past allegations yielded a single report. The court examined the report and determined that charges had not been pressed and the report did not show whether the accusations were true or false. Pursuant to our decision in *Mazurek*, it was Ring's burden to establish that the accusations were false. Ring did not do so. The District Court correctly interpreted our decision in *Anderson*, and did not abuse its discretion, when it denied Ring's request to question S.H., having determined the report regarding S.H.'s previous accusation did not show the accusation was false and, therefore, was inadmissible.

¶21    *2. Did a jury instruction stating that intoxication is not a defense violate Ring's right to due process, when he testified that he had taken prescription medication?*

9

¶22 Section 45-5-507(1), MCA, provides as follows:

> **Incest.** (1) A person commits the offense of incest if the person knowingly marries, cohabits with, has sexual intercourse with, or has sexual contact, as defined in 45-2-101, with an ancestor, a descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter.

Critically, the statute requires that, to be guilty of incest, an individual must have acted "knowingly." Section 45-2-101(35), MCA, provides that "a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists." Section 45-2-203, MCA, provides that, in most cases, intoxication may not be taken into account in determining the existence of a mental state that is an element of an offense:

> **Responsibility -- intoxicated condition**. A person who is in an intoxicated condition is criminally responsible for the person's conduct, and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant proves that the defendant did not know that it was an intoxicating substance when the defendant consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.

In *Montana v. Egelhoff*, 518 U.S. 37, 55, 116 S. Ct. 2013, 2023 (1996), the United States Supreme Court held that § 45-2-203, MCA, reduced the State's burden of proving an offense, but did not violate a criminal defendant's right to due process by eliminating the requirement that the State prove each element of an offense.

¶23 Ring argues that the jury was precluded from fully taking into consideration Ring's mental state by the jury instruction pertaining to being in an "intoxicated condition" due to consumption or ingestion of an "intoxicating substance." The jury instruction read as follows:

10

> A defendant who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed or otherwise ingested the substance causing the condition. An intoxicating substance includes a controlled substance such as morphine and hydrocodone.

Ring argues that his case is distinguishable from cases involving voluntary intoxication, like *Egelhoff*, because he was "following physician orders" when he ingested medication that made him drowsy. He asserts that § 45-2-203, MCA, as applied to him, is unconstitutional because it violates his state and federal constitutional rights of due process and his state constitutional right to defend himself against criminal charges. The statute also, he alleges, unconstitutionally eliminates the State's burden of proof to establish that Ring knowingly committed incest.

¶24 Ring's argument suffers from the fatal flaw that he was not following physician orders when he ingested four hydrocodone pills, combined with Naproxen, cold medicines and possibly the lingering effects of morphine. He was prescribed one hydrocodone pill per day for pain, as well as two Naproxen, twice a day. He had taken four times the dosage of hydrocodone prescribed to him, in combination with several other medications. This case is no different from any other case in which a criminal defendant chooses to become intoxicated, commits a crime and is held accountable for his conduct, pursuant to § 45-2-203, MCA. *See e.g. Egelhoff*, 518 U.S. at 56, 116 S. Ct. at 2023-24; *State v. McCaslin*, 2004 MT 212, 322 Mont. 350, 96 P.3d 722 (jury instruction based on § 45-2-203, MCA, did not shift the burden of proving the mental state element to the defendant and did not violate the defendant's right to due process under the Montana Constitution); *State v. Smith*, 2005 MT

325, 329 Mont. 526, 127 P.3d 353 (district court did not abuse its discretion in denying defendant's request for a jury instruction allowing consideration of defendant's intoxication in determining whether he acted with the requisite intent); *State v. Belanus*, 2010 MT 204, 357 Mont. 463, 240 P.3d 1021 (Section 45-2-203, MCA, did not violate defendant's fundamental right to defend, pursuant to the Montana Constitution, where defendant presented evidence of his intoxication and no jury instruction based on the statute was given); *Myran*, ¶ 28 (jury instruction mirroring the language of § 45-2-203, MCA, did not violate defendant's right to due process or to present a defense, where defendant fully presented his defense, including evidence of intoxication, at trial).

¶25　Nor does applying the statute through a jury instruction of this type violate Ring's rights to due process or to defend himself against criminal charges. Section 45-2-203, MCA, does not eliminate the State's burden of proving each element of the charged offense beyond a reasonable doubt, it simply reduces the burden by making it easier to bear. The United States Supreme Court explained in *Egelhoff*, 518 U.S. at 55, 116 S. Ct. at 2023:

> [R]educing' the State's burden . . . [by excluding evidence of intoxication that might refute *mens rea*] is not unconstitutional, unless the rule of evidence itself violates a fundamental principle of fairness (which, as discussed, this one [(§ 45-2-203, MCA)] does not). We have rejected the view that anything in the Due Process Clause bars States from making changes in their criminal law that have the effect of making it easier for the prosecution to obtain convictions.

(Citation and quotation omitted). The Supreme Court concluded that the Due Process Clause does not prohibit Montana from "disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue." *Egelhoff*, 518 U.S. at 56, 116 S. Ct. at 2024. This Court has adhered to the principle set forth in *Egelhoff* and has rejected challenges to jury

12

instructions based on § 45-2-203, MCA, on State constitutional grounds. *See McCaslin* (rejecting challenge to § 45-2-203, MCA, under Montana's Due Process clause, Article II, Section 17, of the Montana Constitution); *Myran* (rejecting challenge to § 45-2-203, MCA, based on contention that Montana's Constitution provides a greater right to assert a defense than its federal counterpart). We conclude that Ring's case is controlled by *Egelhoff* and its progeny. The jury instructions in this case fully and fairly instructed the jury as to the applicable law, and no reversible error has been committed.

¶26 *3. Did the District Court abuse its discretion when it denied Ring's motion for a new trial based on an allegation of juror bias?*

¶27 It is within a district court's discretion to grant a defendant a new trial "if required in the interest of justice." Section 46-16-702(1), MCA. We have consistently held that where juror nondisclosure does not amount to an intentional concealment, and no further evidence of bias is proven, there are no grounds for a new trial. *Dunfee*, ¶ 16; *State v. Woods*, 221 Mont. 17, 21, 716 P.2d 624, 627 (1986). In *Woods*, a burglary case, a juror was never asked whether he had been a victim of burglary and did not disclose that he had been burglarized three times. *Woods*, 221 Mont. at 21, 716 P.2d at 626-27. We held that the nondisclosure was "inadvertent and unintentional" and found no grounds for reversal. *Woods*, 221 Mont. at 21, 716 P.2d at 627.

¶28 Similarly, in *Dunfee*, a juror answered every question asked of him in voir dire truthfully, but did not reveal that he had been assaulted by the defendant's brother. *Dunfee*, ¶ 17. At a hearing on the defendant's motion for a new trial based on juror misconduct, the juror testified under oath that he had no ill will towards the defendant and that he was a fair

and impartial juror. *Dunfee*, ¶ 17. This Court remarked that "[o]ther than his speculation, Dunfee has presented no evidence that the juror held any ill will toward him." *Dunfee*, ¶ 17. We held that the district court did not abuse its discretion in denying the defendant's motion for a new trial. *Dunfee*, ¶ 18.

¶29 The District Court, after holding a hearing on Ring's motion for a new trial and requesting supplemental briefing from the parties, cited *Woods* and *Dunfee* in concluding that Ring had not established he was entitled to a new trial. The court noted that, as in *Woods*, the juror in question was never asked whether she was an incest victim in voir dire, so her failure to disclose that fact could not amount to intentional concealment. In addition, the court reasoned, there was no evidence the juror had exhibited any bias or ill will towards Ring.

¶30 On appeal, Ring does not challenge the District Court's determination that the juror's failure to disclose her experience of incest did not amount to intentional concealment. Instead, Ring distinguishes *Woods* on the basis that being a victim of a past sex crime produces inherent bias. He argues that the juror lacked the capacity to determine whether she could consider the case without bias.

¶31 We find the District Court's disposition of Ring's motion for a new trial well-reasoned and decline Ring's invitation to redefine our test for juror bias in the context of a sex crime trial. As in *Dunfee*, Ring has shown no evidence beyond his own speculation that the juror here held any bias or ill will towards him. As the District Court pointed out, she "uniformly stated that she was unbiased and initially questioned whether Ring was guilty." Having been a victim of a sex crime does not produce inherent bias any more than having

14

been a victim of a burglary or a physical assault does; the District Court correctly relied upon our decision in *Woods*. The District Court did not abuse its discretion in denying Ring's motion for a new trial on grounds of juror misconduct.

¶32     *4. Did the District Court err when it imposed conditions of the sentence that imposed restitution in an unspecified amount and ordered Ring to pay for the cost of his incarceration?*

¶33     Ring alleges that several portions of his sentence are illegal and should be stricken from the judgment. In *State v. Heafner*, 2010 MT 87, ¶ 11, 356 Mont. 128, 231 P.3d 1087, we held that when a portion of a sentence is illegal, the proper practice is to remand to the district court to correct the illegal conditions.

### a. Parole conditions

¶34     District courts have only the power to impose those parole conditions which are specifically and explicitly authorized by statute. *State v. Burch*, 2008 MT 118, ¶ 36, 342 Mont. 499, 182 P.3d 66. Apart from those conditions set forth in the statute, the authority to impose conditions on parole rests solely with the Board of Pardons and Parole (Board). *Heafner*, ¶ 5. The Board may consider any conditions of parole imposed in excess of a district court's statutory authority as recommendations. *See Heafner*, ¶ 6. We have held that where no part of a defendant's sentence is suspended, conditions set forth in the sentence may amount to conditions on parole. *See State v. Gunderson*, 2010 MT 166, ¶¶ 109-10, 357 Mont. 142, 237 P.3d 74.

15

¶35   Ring argues that Conditions 2-14, 17-19, 21(A)-(L), (O) amount to conditions on parole and are not authorized by statute.  The State agrees.  Because no portion of Ring's sentence is suspended, the conditions Ring challenges amount to conditions of parole and are illegal under these circumstances.  *See Gunderson*, ¶¶ 109-10.  Consistent with our decision in *Heafner*, ¶ 11, we therefore remand to the District Court to strike these conditions of parole.   The District Court, in its discretion, may reinstate these "conditions" as recommendations to the Board.  *See Heafner*, ¶ 6.

### b.  Restitution

¶36   Section 46-18-244, MCA, requires the sentencing court to "specify the total amount of restitution that the offender shall pay."  We have held that this means a district court may only order a defendant to pay a set amount of restitution, based on the evidence provided by the State.  *Heafner*, ¶ 7.  Where the court has not specified the amount of restitution to be paid, remand for further proceedings to determine an appropriate amount of restitution is an appropriate remedy.  *See Heafner*, ¶ 13.

¶37   The District Court's judgment, in Condition 16, required Ring to pay "all future medical expenses that his victim can reasonably be expected to incur as a result of the defendant's criminal conduct, including the cost of psychological counseling, therapy, and treatment, in an amount to be determined by the Court's restitution officer[.]"  This order of restitution does not meet the statutory requirement for specificity, as clarified in *Heafner*. Accordingly, we remand so the District Court may strike this condition and, in its discretion, conduct such proceedings as it deems necessary to order restitution in a specified amount.

### c.  Future costs of incarceration

16

¶38 The State concedes that Condition 20, requiring Ring to pay "all future costs of incarceration and medical costs while incarcerated, pursuant to Section 7-32-2245" should be stricken on remand. As the State concedes, § 7-32-2245, MCA, applies only to costs of confinement in a "detention center" and cannot be applied to Ring's incarceration in the Montana State Prison. *See* § 7-32-2201, MCA (describing and defining "detention center"). Accordingly, we remand to the District Court to strike this condition.

## CONCLUSION

¶39 We affirm the District Court's determinations with regards to S.H.'s alleged past accusations; the jury instruction pertaining to the effect of Ring's intoxication; and Ring's motion for a new trial. We reverse and remand the sentence to the District Court for further proceedings to (1) either strike Conditions 2-14, 17-19, 21(A)-(L), (O), or restate those conditions as recommendations to the Board; (2) either strike Condition 16 pertaining to restitution, or set restitution in a specified amount; and (3) strike Condition 20, pertaining to Ring's costs of incarceration.

¶40 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE

17