FILED

06/24/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0355

DA 24-0355

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 133

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

COLE MICHAEL JACOB,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-23-43
Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Kevin E. Vainio, Attorney at Law, Butte, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Selene Koepke, Assistant Attorney General, Helena, Montana

     James Lapotka, Lake County Attorney, Lori Adams, Deputy County Attorney, Polson, Montana

Submitted on Briefs:  June 4, 2025

Decided:  June 24, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Cole Michael Jacob appeals from the Twentieth Judicial District Court, Lake County's July 11, 2024 Judgment. Jacob appeals the District Court's decision to permit the State to read a victim impact statement at his sentencing. Jacob also argues that he should have been sentenced under a plea agreement he had rejected because he was not mentally competent to reject the agreement.

¶2 We restate the issues on appeal as follows:

*Issue 1: Whether Jacob's due process rights were violated when the District Court permitted the State to read a victim impact statement at sentencing.*

*Issue 2: Whether Jacob preserved his argument for appeal that he should have been sentenced pursuant to the plea agreement he rejected.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On February 8, 2023, the State charged Jacob with Indecent Exposure, a Felony, in connection with an incident where Jacob exposed himself to a minor. After initially pleading not guilty, Jacob executed a plea agreement on January 30, 2024, pursuant to which he agreed to enter an *Alford* plea in exchange for the State's recommendation that he serve a 10-year sentence with 6 years suspended and the State's withdrawal of its notice of intent to seek persistent felony offender (PFO) status for Jacob. The District Court held a change of plea hearing on February 7, 2024, but Jacob requested more time to discuss the executed agreement with his counsel. The District Court held a second change of plea hearing on February 14, 2024, at which both Jacob and his counsel were present. At that hearing, Jacob indicated that he would not be changing his plea after all.

2

¶4 On March 4, 2024, the day set for the first day of Jacob's trial, Jacob requested to change his plea. Jacob entered an *Alford* plea and executed a new plea agreement with the State. Under the new plea agreement, the State agreed not to seek a sentence in excess of 20 years and to withdraw its PFO notice.

¶5 The District Court held a sentencing hearing on May 8, 2024. The State presented evidence in support of its recommendation that Jacob be sentenced to 20 years at the Montana State Prison (MSP) and be required to complete sex offender treatment. At the end of its presentation, the State asked to read a statement from the victim's father about the impact Jacob's actions had on both his and his daughter's lives. The statement included the following relevant excerpts:

> She now gets picked up to go to school and picked up after class because she doesn't feel safe. The thought of my daughter getting followed that day just makes me sick, knowing her life could have been changed for the worst if I didn't raise her the way I did . . . .

> What if she was closer to that car, would he have tried to grab her? Would she have been drugged and raped, found dead in a ditch somewhere? Would I have ever seen my daughter again?

Jacob objected to the statement being read, protesting that he had not been provided with a copy. The District Court permitted the statement to be read over Jacob's objection. Following further presentation and argument, the District Court sentenced Jacob to 15 years at MSP and required him to complete sex offender treatment before being eligible for parole.

## STANDARD OF REVIEW

¶6 We review criminal sentences for legality, asking whether the sentence falls within the parameters set by the applicable sentencing statutes. *State v. Mainwaring*, 2007 MT 14, ¶ 7, 335 Mont. 322, 151 P.3d 53.

## DISCUSSION

¶7 *Issue 1: Whether Jacob's due process rights were violated when the District Court permitted the State to read a victim impact statement at sentencing.*

¶8 Jacob argues that he is entitled under his constitutional right to due process to a new sentencing hearing because he did not have sufficient time to review the victim impact statement before it was read into the record.[1] Under both the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution, a defendant has a due process right that protects him against a sentence predicated on misinformation. *Bauer v. State*, 1999 MT 185, ¶ 20, 295 Mont. 306, 983 P.2d 955. "Under the due process guarantee, every person must be given an opportunity to explain, argue, and rebut any information—including presentencing information—that may lead to a deprivation of life, liberty, or property." *Bauer*, ¶ 22; *see also* § 46-18-115(4)(c), MCA ("[I]f the victim's statement includes new material facts upon which the court intends to rely, the court shall allow the defendant adequate opportunity to respond."). But when a

---

[1] The State and Jacob dispute whether he ever received a copy of the victim impact statement. Because we determine that Jacob's due process rights were not violated independent of whether he received a copy of the statement, we do not comment on which party's recitation of the facts is correct.

4

defendant does not allege that any information in the State's presentation is false, the defendant's due process rights are not implicated. *Mainwaring*, ¶ 16.

¶9 Jacob asserts that the victim's father's statement contained two material facts he was entitled to rebut: (1) "the effect of the incident on the father" and (2) Jacob's "propensity to kidnap, rape, and murder his daughter." As to the effect of the incident on the father, Jacob did not allege, either below or on appeal, that the victim's father's statement was false. Where there is no claim that the court "relied on materially false information in sentencing . . . there is no due process violation requiring re-sentencing." *Mainwaring*, ¶ 16.

¶10 Jacob asserts that in his victim impact statement, the victim's father "unfairly speculate[d] that 'if presented with the opportunity, [Jacob] would be a kidnapper, rapist, and murderer.'" A defendant's due process right protects him against a sentence based on *facts* that he alleges are false. *See Bauer*, ¶ 22; § 46-18-115(4)(c), MCA ("[I]f the victim's statement includes new *material facts* upon which the court intends to rely, the court shall allow the defendant adequate opportunity to respond.") (emphasis added). As we have noted in other contexts, what distinguishes facts from opinions is that facts are "capable of being proven false." *Goguen v. NYP Holdings, Inc.*, 2024 MT 47, ¶ 59, 415 Mont. 356, 544 P.3d 868. A fact capable of being proven false can be rebutted; an opinion cannot. Nothing in the father's victim impact statement amounted to a factual assertion that Jacob had a "propensity to kidnap, rape, and murder," as Jacob characterizes it. Nothing in the record suggests that this was presented as anything other than a series of speculative

5

questions to illustrate the mental anguish he was experiencing as a result of Jacob's actions; nor does anything in the record suggest that the District Court took it as anything else. Even in his argument on appeal, Jacob characterizes the victim's father's statement as "speculat[ing] that 'if presented with the opportunity, [Jacob] would be a kidnapper, rapist, and murderer.'" Jacob's due process rights were not violated when the District Court permitted the State to read the father's victim impact statement at sentencing.

¶11    *Issue 2: Whether Jacob preserved his argument for appeal that he should have been sentenced pursuant to the plea agreement he rejected.*

¶12    Jacob argues that he was entitled to a sentence that conformed with the plea agreement he rejected on February 14, 2024, because he was not mentally fit to reject the agreement. He asserts that his entitlement stems from his constitutional right to make a "voluntary, knowing, and intelligent choice among the alternative courses" when entering a guilty plea. *State v. Boucher*, 2002 MT 114, ¶ 22, 309 Mont. 514, 48 P.3d 21. The State responds that Jacob did not raise this argument before the District Court and has not requested that we exercise plain error review, so he is not entitled to review. Jacob agrees that he is not seeking plain error review, but he asserts that he raised this argument before the District Court, so he does not need to invoke plain error.

¶13    We generally will not review issues raised for the first time on appeal due to the unfairness of faulting a lower court for failing to correctly rule on an issue that it did not have the opportunity to consider. *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72. Jacob contends that he gave the District Court the opportunity to consider his mental fitness to reject the January 30, 2024 plea agreement because he asked the District

6

Court to impose the sentence contained in that agreement at the May 8, 2024 hearing. A review of the transcript of the May 8, 2024 hearing, including the portions Jacob cites in support of his contention, does not support Jacob's contention that he raised this argument before the District Court. At sentencing, Jacob argued that while "nothing in psychology happens . . . in a flash," he had become a "changed individual," and "that would be a good reason to . . . go back to the" terms of the January 30, 2024 agreement. Read in context, Jacob's argument was that the District Court should give him a more lenient sentence because he had improved over the course of the proceedings. At no point did Jacob argue that the District Court was constitutionally required to follow the January 30, 2024 agreement, or that his mental state on February 14, 2024, precluded him from rejecting the agreement. Because the District Court did not have an opportunity to consider those arguments, which Jacob now raises on appeal, Jacob did not preserve them.

## CONCLUSION

¶14 Jacob's due process rights were not violated by the District Court's decision to permit the State to read a victim impact statement at his sentencing. Jacob did not preserve his argument for appeal that he should have been sentenced pursuant to the plea agreement he rejected. The District Court's July 11, 2024 Judgment is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE

7